UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AUDIOWEAR TECHNOLOGY CORPORATION,<br><br>*Plaintiff,*<br><br>v.<br><br>THE, PARTERNSHIPS, CORPORATIONS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED IN SCHEDULE A,<br><br>*Defendants.* | Case No. 1:24-cv-11797 |

**COMPLAINT**

Plaintiff Audiowear Technology Corporation ("Audiowear" or "Plaintiff") hereby brings the present patent infringement action against the Partnerships, Corporations, and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

**I. JURISDICTION AND VENUE**

1.     This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Patent Act, 35 U.S.C. § 1, et seq., 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants because each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, by offering to sell infringing goods to customers living in Chicago, Illinois through fully interactive, e-commerce stores operating under the seller aliases identified in Schedule A attached hereto (the "Seller

Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offering shipping to the United States, including Illinois, accepting payment in U.S. dollars and, each of the Defendants have offered to sell or sold products featuring Plaintiff's patented designs to residents of Illinois. Each of the Defendants, therefore, is committing tortious acts in Illinois and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

3. Joinder of the Defendants is proper because evidence demonstrates that the Defendants are part of an interconnected infringement ring, as each of the Defendants (i) is based in and operates from China, (ii) sells identical (not merely similar) infringing products apparently sourced from the same manufacturer, (iiii) uses the same four photographs in its product listings, (iv) uses similar product descriptions and verbiage in their respective product listings, and (v) began selling the infringing products within the same 6-month period of time—all of which strongly suggests that Defendants' operation arises out of the same series of occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their operation.

## II. INTRODUCTION

4. This action has been filed by Audiowear to combat e-commerce store operators who infringe Audiowear's patent rights by making, using, offering for sale, selling and/or importing into the United States unauthorized and unlicensed products, namely the audio hats (the "Infringing Products").

5. Defendants create e-commerce stores operating under one or more Seller Aliases that are making, using, offering for sale, selling, and/or importing into the United States Infringing Products to unknowing consumers. Audiowear has filed this action to combat Defendants'

infringement of its patented inventions, as well as to protect unknowing consumers from purchasing Infringing Products over the Internet. Plaintiff has been and continues to be irreparably damaged from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing its patented products as a result of Defendants' actions and seeks injunctive and monetary relief.

### III. THE PARTIES

6. Plaintiff Audiowear Technology Corporation is a Delaware corporation with its principal places of business located at 8173 Pioneer Blvd., Suite R. Artesia, CA 90701. *See* **Exhibit 1**.

7. Audiowear is the lawful assignee of all rights, title, and interest in and to U.S. Patent. No. 8,491,146 B2, entitled "Baseball-Style Cap with Amplified Stereo Speakers," that issued on July 23, 2013 ("the '146 Patent"). Attached hereto as **Exhibit 2** is a true and correct copy of the '146 Patent.

8. Plaintiff's patented and licensed audio hat products ("Patented Products") are distributed and sold online to consumers throughout the United States, including in Chicago, Illinois.

**The Defendants**

9. Defendants are individuals and business entities of unknown or false makeup who own and/or operate one or more of the e-commerce stores under at least the seller aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff.

10. Upon information and belief, each of the Defendants resides outside the United States in the People's Republic of China. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

11.     Defendants use a variety of tactics to conceal their identities and the full scope of their operation, making it virtually impossible for Audiowear to discover Defendants' true identities and the exact interworking of their network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

### IV. DEFENDANTS' UNLAWFUL CONDUCT

12.     Recently, Audiowear has identified numerous fully interactive, e-commerce stores, including those operating under the Seller Aliases, which have offered for sale and/or are selling Infringing Products to consumers in this Judicial District and throughout the United States.

13.     According to U.S. Customs and Border Protection ("CBP"), most infringing products now come through international mail and express courier services (as opposed to containers) due to increased sales from offshore online infringers. *The Counterfeit Silk Road: Impact of Counterfeit Consumer Products Smuggled into the United States prepared for The Buy Safe America Coalition* by John Dunham & Associates ("Buy Safe Study").  A true and correct copy of the Buy Safe Study is attached hereto as **Exhibit 3**.

14.     According to the Buy Safe Study, the bulk of infringing products sent to the United States "come from China and its dependent territories," accounting for over 90.6% of all cargo with intellectual property rights ("IPR") violations.   Exhibit 3.  Of the $1.23 billion in total IPR violations intercepted, $1.12 billion was from China.  Exhibit 3.  Infringing and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.  Exhibit 3.

15.     Third-party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing infringers to "routinely use false or inaccurate names and addresses when registering with these e-commerce

platforms." **Exhibit 4**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. Int'l L. & Bus. 157, 186 (2020); *see also*, report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 5**, and finding that on "at least some e-commerce platforms, little identifying information is necessary for [an infringer] to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary.

16. Infringers hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual storefronts. Exhibit 5 at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, infringers can have many different profiles that can appear unrelated even though they are commonly owned and operated. Exhibit 5 at p. 39. Further, "Ecommerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of [infringement]." Exhibit 4 at 186-187.

17. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offering shipping to the United States, including Illinois, accepting payment in U.S. dollars and, on information and belief, have sold Infringing Products to residents of Illinois.

18. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon

Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Audiowear has not licensed or authorized Defendants to sell the Patented Products, and none of the Defendants are authorized retailers of the Patented Products.

19. Upon information and belief, Defendants also organize countless business entities using their employees' information in order to provide a false or misleading sense of business separation when in fact all of the e-commerce stores and business entities are centrally owned and controlled.

20. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading, and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operations.

21. E-commerce store operators like Defendants regularly register or acquire new Seller Aliases for the purpose of offering for sale and selling Infringing Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their operation, and to avoid being shut down when intellectual property rights holders complain about Defendants' unlawful conduct.

22. E-commerce store operators like Defendants are in constant communication with each other and regularly participate in chat rooms such as QQ.com and Weibo, and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

23. Infringers such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Plaintiff's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff.

24. Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Infringing Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Audiowear, have jointly and severally, knowingly and willfully offered for sale, sold, and/or imported into the United States Infringing Products in violation of Audiowear's '146 Patent. Each e-commerce store operating under the Seller Aliases offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold Infringing Products into the United States and Illinois over the Internet.

25. Audiowear's Patented Products are marked with Audiowear's '146 Patent. Defendants' infringement of the '146 Patent by making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use of the Infringing Products was willful.

26. Defendants' infringement of the '146 Patent in connection with the making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use of the Infringing Products, including the making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use of Infringing Products into Illinois, is irreparably harming Audiowear and has nearly destroyed the market for Audiowear's authorized licensees, who have seen a substantial drop in revenue over the last year.

**COUNT I**
**INFRINGEMENT OF UNITED STATES PATENT REG. NO. 8,491,146**
**(35 U.S.C. § 271)**

27.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

28.     Defendants are making, using, offering for sale, selling, and/or importing into the United States Infringing Products that directly infringe, either literally or under the Doctrine of Equivalents, at least claims 1 and 16 of the '146 Patent.

29.     Defendants have infringed the '146 Patent through the aforesaid acts done without the permission or authorization of Audiowear and Defendants will continue to do so unless enjoined by this Court.

30.     Upon information and belief, each of Defendants has been aware of the '146 Patent and Defendants' infringement has been reckless and willful.

31.     Defendants have also knowingly and intentionally induced others to infringe the '146 Patent in this judicial district and throughout the United States.  Therefore, Defendants are each liable for indirect infringement under 35 U.S.C. §271(b).

32.     Defendants have also contributorily infringed the '146 Patent pursuant to 35 U.S.C. §271(c) by offering to sell, selling, or importing into the United States the Infringing Products, constituting a material part of the claimed invention in the '146 Patent, knowing it to be especially adapted for use in an infringement, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

33.     As a direct and proximate cause of Defendants' wrongful conduct, Audiowear has suffered and will continue to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented

invention. Audiowear has no adequate remedy at law. Therefore, Audiowear is entitled to injunctive relief pursuant to 35 U.S.C. § 283.

34. Plaintiff is also entitled to equitable relief, including unjust enrichment, prejudgment interest, costs, and a reasonable royalty based on the infringer's profits.

35. Audiowear is entitled to recover damages adequate to compensate for the infringement, in an amount no less than a reasonable royalty, pursuant to 35 U.S.C. § 281 and 284.

36. Defendants' conduct makes this an "exceptional case" and entitles Audiowear to recover its attorneys' fees pursuant to 35 U.S.C. § 285.

<b>PRAYER FOR RELIEF</b>

WHEREFORE, Audiowear prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. making, using, offering for sale, selling, and/or importing into the United States any Infringing Products not authorized by Audiowear;

   b. aiding, abetting, inducing, contributing to, or otherwise assisting anyone in infringing upon the '146 Patent; and

   c. effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in Subparagraphs (a) and (b).

2) Entry of an Order that, upon Audiowear's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, Wish.com, Walmart, Etsy, and Temu (collectively, the "Third Party

Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of the Infringing Products;

3)      That Audiowear be awarded such damages as it shall prove at trial against Defendants that are adequate to compensate Audiowear for Defendants' infringement of the '146 Patent, but in no event less than a reasonable royalty for the use made of the invention by the Defendants, together with interest and costs, pursuant to 35 U.S.C. § 284;

4)      That the amount of damages awarded to Audiowear to compensate it for infringement of the '146 Patent be increased by three times the amount thereof, due to Defendants' willful infringement and unlawful conduct to avoid enforcement of Audiowear's '146 Patent, as provided by 35 U.S.C. § 284;

5)      In the alternative, that Plaintiff be awarded all profits realized by Defendants from Defendants' infringement of the Plaintiff Patents, pursuant to 35 U.S.C. § 289;

6)      That the Court order this an "exceptional case" and award Audiowear its reasonable attorneys' fees pursuant to 35 U.S.C. § 285; and

7)      Award Audiowear its costs and any and all other relief that this Court deems just and proper.

Dated: November 15, 2024                     Respectfully submitted,

                                             /s/ Matthew R. Grothouse
                                             Matthew R. Grothouse (Illinois #6304834)
                                             matt.lighthouse@lozaip.com
                                             Lena N. Bacani (*pro hac vice* to be filed)
                                             lena.bacani@lozaip.com
                                             Loza & Loza, LLP
                                             305 N. Second Ave., #127
                                             Upland, CA 91786
                                             Phone: (872) 314-1374

                                             *Counsel for Plaintiff*